IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02937-MEH

VERONICA CANO ESTRADA,

    Plaintiff,

v.

TEXAS ROADHOUSE HOLDINGS, LLC,

    Defendant.

# ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff initiated this case in the 17th Judicial District Court in Adams County, Colorado, on July 15, 2018, asserting a single claim for relief under the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. § 13-21-115, related to an alleged slip and fall that occurred inside Defendant's restaurant. On November 15, 2018, Defendant timely removed the matter, and now before the Court is Defendant's Motion for Summary Judgment (ECF 32). Defendant argues Plaintiff cannot establish three necessary elements of her CPLA claim. The matter is fully briefed and the Court heard oral argument on February 7, 2020. For the reasons that follow, the Court will deny Defendant's Motion.

## **FINDINGS OF FACT**

    The Court makes the following findings of fact viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter. Unless noted, the facts are undisputed.

1. On July 16, 2016, Plaintiff went to a Texas Roadhouse restaurant in Northglenn, Colorado, with her husband and two daughters.

2. While the Plaintiff was sitting in a booth in the dining area, the restaurant suffered a power failure because a transformer located outside of the building "blew."

3. The power failure caused the hood vents in the restaurant's kitchen to stop working.

4. Because the hood vents stopped working, smoke from the kitchen began to seep into the dining area.

5. Plaintiff noticed the smoke seeping into the dining area and that some diners were leaving the restaurant.

6. Plaintiff fainted while sitting at the booth.

7. Escorted by her husband, Plaintiff began to walk out of the restaurant.

8. Plaintiff does not recall whether a restaurant employee offered her the use of a rolling chair.

9. As Plaintiff and her husband were nearing the restaurant's exit, Plaintiff listed to her left before falling onto her buttocks and then her back.

10. Plaintiff claims she slipped on water and then fainted when she was already on her back on the ground.

11. At the time of the fall, neither Plaintiff nor her husband or daughters mentioned that there was water on the floor or that Plaintiff had slipped on a substance.

12. Prior to Plaintiff's fall, numerous other restaurant patrons and employees walked through the area where Plaintiff fell without incident.

13. Plaintiff remained on the ground for approximately two minutes.

14. While Plaintiff was on the ground, an individual applied water to Plaintiff's head and neck as her husband and restaurant employees knelt next to her.

15. After two minutes, Plaintiff was helped into a rolling chair and rolled out of the restaurant.

16. Plaintiff was treated at St. Anthony Hospital for a hip contusion and low back strain.

## **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## **ANALYSIS**

Plaintiff asserts a single claim against Defendant for violation of the CPLA related to her fall in Defendant's restaurant. The CPLA applies to actions against a landowner for personal injuries occurring on its property when the landowner breaches the duty of care it owes to a

plaintiff. *Springer v. City & Cty. of Denver*, 13 P.3d 794, 803 (Colo. 2000). Subsection (3) of the statute defines the respective duties a landowner owes based on whether the person alleging injury is characterized as a trespasser, licensee, or invitee under the statute. Colo. Rev. Stat. § 13-21-115(3). "Courts determine, as a matter of law, whether the injured person was a trespasser, a licensee, or an invitee." *Axelrod v. Cinemark Holdings, Inc.*, 65 F. Supp. 3d 1093, 1097 (D. Colo. 2014). In this case, it is undisputed that Defendant was a "landowner" and Plaintiff was an "invitee" under the CPLA[1] at all relevant times.

In Colorado, an invitee "may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c)(I). The Colorado Supreme Court has recognized that "'unreasonable failure to exercise reasonable care' appears to be redundant" and that the statute merely requires "proof that defendant failed to exercise reasonable care." *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 575 (Colo. 2008) (quoting *id.*). Thus, for an invitee to prevail on a premises liability claim, she must prove: (1) the landowner actually knew or should have known about the danger to the invitee, (2) the landowner failed to exercise reasonable care to protect the invitee from that danger, (3) proximate cause, and (4) damages. *Id*. Defendant moves for summary judgment arguing that Plaintiff cannot carry her burden at trial as to the first three elements of her claim.

---

[1] Section 13-21-115(5)(a) defines invitee as "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain."

5

Before discussing Defendant's argument, the Court must first address the parties' formulation of the "dangerous condition" in this case. In her Amended Complaint, Plaintiff alleges that at the time she "was rushed out the restaurant because there was a fire in the kitchen," "there was spilled water on the floor that was left unattended by the employees." Am. Compl. ¶¶ 8, 9, ECF 21. She continues, "[t]he fire in the kitchen and spilled water on the floor caused and were a dangerous condition," *id*. at ¶ 10, and alleges that she "slipped, fell, and was injured" "[a]s a result of the kitchen fire and the unattended spilled water on the floor," *id*. at ¶ 11. Despite Plaintiff's direct allegation as to the dangerous condition in this case, the parties make no arguments related to a kitchen fire in their briefing; instead they focus almost entirely on spilled liquid on the floor.[2] *See, e.g.,* Mot. 6-7 ("[Plaintiff] cannot establish [Defendant] had actual or constructive knowledge of the alleged dangerous condition she claims caused her to fall: water on the floor near the host stand" and "Plaintiff specifically alleged in her Complaint and testified in her deposition that her fall was due to water on the ground . . . Accordingly, the 'dangerous condition' in this case is the alleged water on the ground."); Ex. D to Def.'s Mot. ¶ 19, ECF 32-4 ("As I am walking out, I slip on water that was on the floor and I end up fainting."); Resp ¶ 13 (Plaintiff admitting she is claiming that she slipped and fell, and then lost consciousness once she was already on the ground);

---

[2] In arguing causation in her Response, Plaintiff implies that the danger in this case was the evacuation of the restaurant as well as liquid on the floor. Resp. 7 ("Defendant is responsible for the activities that were conducted on its property, which included evacuating patrons . . . . Plaintiff's fall occurred because of an activity conducted on Defendants' [sic] property: evacuation of the restaurant."). The Court will not consider an allegation that the dangerous condition was an evacuation because Plaintiff raised this for the first time in her Response. *Cf. Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("While it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint, . . . a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint.").

and Ex. 1 to Pl.'s Resp., Decl. of Jennifer Franco ¶ 10, ECF 36-1 ("As my mother neared the exit door she slipped on a liquid on the floor."). Further, during oral argument on the Motion, Plaintiff confirmed she is seeking damages related to her alleged slip and fall in Defendant's restaurant, and that only. Because the Motion, briefing, and oral argument raised only whether Defendant had knowledge of and failed to exercise reasonable care to protect Plaintiff from spilled liquid on the floor and whether any conduct by Defendant caused Plaintiff's injuries, the Court will likewise address the same.

**I.      Defendant's Knowledge**

Whether a landowner "actually knew or should have known" about a danger may be satisfied by a showing of either actual or constructive knowledge. *Lombard*, 187 P.3d at 571-72. Constructive knowledge is the knowledge that one exercising reasonable diligence should have. *Id.* at 572; *see also Clemmons v. FC Stapleton II, LLC*, 485 F. App'x 904, 908 (10th Cir. 2012) ("Before there can be liability for injuries resulting from a dangerous condition, it must be shown . . . that the defendant had constructive knowledge of the condition and failed to correct it ([i.e.], that the condition had existed for such a period of time that the defendant, in the exercise of due care, could have and should have known of it)." (alteration in original) (quoting *Bodeman v. Shutto Super Markets, Inc.*, 197 Colo. 393, 394 (1979))). "[A] dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered." *State v. Moldovan*, 842 P.2d 220, 229 (Colo. 1992).

Whether a landowner should have known of a particular danger is generally a question of fact, not law. *See Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2007) ("Whether an injured plaintiff is a trespasser, licensee, or invitee must be decided by the court, but the ultimate issues of liability and damages are questions of fact for a jury, or if none, for the trial judge."). "[A] court cannot grant summary judgment on what is normally a question of fact under Colorado law unless the facts so overwhelmingly and inarguably point in [the movants'] favor that it cannot be said that a reasonable jury could possibly side with the [non-movants] on that question." *Axelrod*, 65 F. Supp. 3d at 1102.

In its briefing, Defendant contends that there was no liquid on the floor at the time Plaintiff fell and argues, if there was, Plaintiff can put forth no evidence that Defendant knew or should have known about it. Defendant cites a declaration from the restaurant's Assistant Service Manager, Allison Bellinger, who attested that she observed Plaintiff "fall as a result of fainting" and that she "had an opportunity to see the floor, and there was no water or substance on [it]." Ex. B to Def.'s Mot., Decl. of Allison Bellinger ¶ 8, ECF 32-2. Defendant also notes that Plaintiff propounded no written discovery, took no depositions, and endorsed no experts in this case. Mot. 7 n.1. Plaintiff responds that there is a genuine dispute as to whether liquid was, in fact, on the floor when Plaintiff fell, relying on the inferences that can be drawn from her family members' three declarations which all state that the back of Plaintiff's clothing was wet when she was helped off the floor. *See, e.g.,* Jennifer Franco Decl. ¶ 11. Although Plaintiff only discusses the reasonable inferences that can be drawn from her witnesses' statements, the Court notes that the three declarations also explicitly state Plaintiff "slipped on a liquid on the floor." *See, e.g., id.* at ¶ 10.

At the February 7, 2020 oral argument on the Motion, Defendant conceded that on the record before the Court there is a factual dispute as to whether there was spilled liquid on the floor at the time Plaintiff fell. Defendant also agreed with the Court that this factual dispute is not one the Court can resolve at the summary judgment stage.

In light of this factual dispute, there is a genuine issue as to whether Defendant should have known about spilled liquid on the ground. Defendant argues that Plaintiff cannot establish water existed on the floor for such a period of time or was of such a nature that Defendant should have discovered it. In support of its Motion, Defendant supplied a thirty-six minute video of security camera footage showing the area where Plaintiff fell, arguing the video shows other patrons walking through the area without incident and does not show any sources of liquid. Ex. C to Def.'s Mot., ECF 33. Plaintiff contends, and the Court agrees, that the video is not clear enough to show whether there is liquid on the floor in the area where Plaintiff fell. What the video does show, however, is that at all times during the thirty-two minutes before Plaintiff fell, at least one restaurant employee—if not more—was standing at the host stand approximately four to six feet from where Plaintiff fell. If there was, in fact, liquid on the floor, given the proximity of multiple employees to the location of the alleged spill, a reasonable jury could find that Defendant, exercising reasonable diligence, should have known about it. In this case, the facts do not so overwhelmingly and inarguably point in Defendant's favor such that a reasonable jury could not possibly side with Plaintiff as to the first element of her claim; therefore, the Defendant is not entitled to summary judgment based on actual or constructive knowledge. *Axelrod*, 65 F. Supp. 3d at 1102.

## II. Security Video Footage and Supplemental Briefing

At oral argument, Defendant contended that, notwithstanding the factual dispute as to the existence of water and the presence of a restaurant employee at the nearby host stand, the Court should grant summary judgment in its favor based on the objective evidence in the security camera video. The Court noted that a common life experience many people have is to see someone slip on liquid or to slip on liquid themselves. Defendant argued that because Plaintiff's fall, as seen in the video, lacks the physical appearance expected based on those common life experiences, the Court can rely on the video to determine that she did not, in fact, slip. While the Court acknowledged that the video supplied by Defendant is evidence it can consider, it invited the parties to prepare supplemental briefing on the extent to which the Court could render a legal ruling, short of the jury, based on of the security camera footage.

On February 12, 2020, Defendant filed a brief in response to the Court's invitation, arguing the Court should enter summary judgment in its favor because the video "blatantly contradicts" Plaintiff's claims and does not show any slip. Def.'s Br. 6, ECF 43. Defendant relies on the Supreme Court's decision in *Scott*,[3] in which the Court considered the parties' conflicting versions of the car chase underlying the plaintiff's claim in light of a videotape which captured it. 550 U.S.

---

[3] Defendant also discusses a handful of Tenth Circuit cases adopting and applying *Scott*, and lists district court decisions which have relied on surveillance video to grant summary judgment notwithstanding conflicting versions of events presented by parties. Given that Defendant classifies these cases as "progeny" of *Scott*, Def.'s Br. 6, and most reiterate *Scott*'s high standard regarding "clear contrary video evidence" that "utterly discredits" an opposing party's version of the facts, *see e.g. Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) and *Ross v. Burlington N. & Santa Fe Ry. Co.*, 528 F. App'x 960, 964 (10th Cir. 2013) (both citing *Scott*, 550 U.S. at 380), the Court focuses its discussion on *Scott*.

at 380-81.  The plaintiff had alleged "there was little, if any, actual threat to pedestrians or other motorists" during the high-speed car chase, but the videotape showed him "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast. . . . swerv[ing] around more than a dozen cars, cross[ing] the double-yellow line, and forc[ing] cars traveling both directions to their respective shoulders to avoid being hit."  *Id*. at 379-80.  The Supreme Court acknowledged that normally when parties present differing versions of events at summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."  *Id*. at 378 (quotation omitted).  However, relying on the videotape in that case, the Court determined that no reasonable jury could have believed the plaintiff's version of the events.  *Id*. at 380.  The Court directed that "[w]hen opposing parties tell two different stories, one of which is *blatantly contradicted* by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id*. (emphasis added).

Although Defendant in this case adopts the Supreme Court's language from *Scott*, this Court does not agree that the videotape "blatantly contradicts" Plaintiff's version of events such that the Court could say no reasonable jury could possibly side with Plaintiff.  The videotape in *Scott*, showing the plaintiff speeding, swerving, running multiple red lights, and traveling in the wrong lane for "considerable periods of time," was in direct opposition to plaintiff's contention that he presented "little, if any, actual threat to pedestrians or other motorists" during the high-speed car chase.  *Id*. at 378-79.  Unlike the clear contradiction presented by the *Scott* video, the video in this case fails to "utterly discredit," *id*. at 381, Plaintiff's version of events.  The Court

11

has repeatedly viewed the security camera footage, which Defendant agreed is "surely not" high-definition. The poor resolution and slow frame rate do not definitively resolve the question of whether there was spilled liquid on the floor. It also does not utterly foreclose the possibility that Plaintiff slipped. Despite the video's poor quality, Plaintiff's right arm can be seen extending toward her husband as she falls to her buttocks and then her back. She ends up on her back with her feet out in front of her, a position which could indicate the person slipped. Plaintiff may not necessarily exhibit every physical indication of slipping on water that one can imagine based on the common life experience of witnessing slips, but such physical manifestations and maneuvers are not prerequisites for a jury to find that a slip occurred. While Defendant proffers a rational and perhaps even convincing version of the events portrayed on the video, the tape does not eliminate all triable issues of fact. Therefore, the Court cannot enter summary judgment based on the videotape.

### III. Defendant's Exercise of Reasonable Care and Causation

Finally, Defendant argues it is entitled to summary judgment because Plaintiff cannot provide evidence that it failed to exercise reasonable care or that its actions caused her damages. The Court finds neither argument dispositive.

Reasonable care is measured by what a person of ordinary prudence would or would not do under the same or similar circumstances. *Lombard*, 187 P.3d at 574. As with questions of a defendant's knowledge, a question of whether a defendant unreasonably failed to exercise reasonable care to protect an invitee from a dangerous condition is generally a question of fact to be determined by the trier of fact. *Giblin v. Sliemers*, No. 14-cv-02742-RBJ, 2016 WL 7337091, at *2 (D. Colo. Dec. 19, 2016) (citing *Vigil*, 103 P.3d at 328). To grant summary judgment, the

facts must be so overwhelmingly and inarguably in Defendant's favor that it cannot be said a reasonable jury could possibly side with Plaintiff on the question. *Axelrod*, 65 F. Supp. 3d at 1102.

Defendant argues Plaintiff cannot establish evidence that it failed to exercise reasonable care to protect Plaintiff "from any dangerous condition." Mot. 9. Defendant then contends "[t]he undisputed facts show that Plaintiff declined the restaurant's offer for medical assistance, ambulance, or rolling chair, and instead opted to attempt to walk out of the restaurant even though she had just moments earlier fainted at her booth," *id*. at 6, and claims, "[i]t is unclear what else Defendant could have done to react to the situation," *id*. at 10. Plaintiff, however, disputes all of Defendant's "undisputed" facts. Her witness declarations state: "Not once was [Plaintiff] offered a rolling chair to help her exit the restaurant nor was [Plaintiff] ever offered an ambulance." *E.g.* Jennifer Franco Decl. ¶¶ 6, 9. Although these allegations set up a genuine fact dispute as to how Defendant reacted after plaintiff fainted at her table, none of these contentions address whether Defendant took reasonable steps to protect her from the danger of spilled liquid on the floor.

Defendant further relies on the slip-and-fall case *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612 (Colo. App. 2003), to support its contention that it did not breach the duty owed to Plaintiff. In *Henderson*, the Colorado Court of Appeals upheld summary judgment in favor of the defendant because the plaintiff failed to present evidence that the defendant failed to use reasonable care. *Id*. at 616. Importantly, however, the defendant in *Henderson* provided deposition testimony that after an employee noticed a spill, he immediately went to retrieve a mop and caution sign, returning three to five minutes later to find the plaintiff laying on the ground. *Id*. The court of appeals upheld summary judgment because the "[p]laintiff submitted no [admissible]

evidence to suggest that the employee could have reacted more quickly or in a different manner." *Id*.

Unlike the defendant in *Henderson*, Defendant here provides no initial factual basis to support its Motion. Defendant states repeatedly in its briefing that the dangerous condition in this case is spilled liquid on the floor. *E.g.* Mot. 7 ("Accordingly, the 'dangerous condition' in this case is the alleged water on the ground."). Despite this, Defendant makes no argument as to whether its actions or inactions taken *before* Plaintiff *fell* were an exercise of reasonable care relative to spilled liquid on the floor. Instead, Defendant focuses its argument on the disputed actions it took *after* Plaintiff *fainted* at her table. Defendant bears the initial responsibility of providing to the Court the factual basis for its motion, *Celotex*, 477 U.S. at 323, and "bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." *Trainor*, 318 F.3d at 982. However, Defendant has failed to show a reasonable jury could not possibly side with Plaintiff and has not satisfied its burden of establishing its right to summary judgment as a matter of law on the reasonable care element. This is especially true given the factual disputes on the record before the Court. If there was spilled liquid on the floor at the time Plaintiff fell, and there is video evidence showing a restaurant employee within a few feet of that spill for thirty minutes prior to Plaintiff's fall, a reasonable jury could determine Defendant failed to acted reasonably to protect Plaintiff from that spill. Therefore, Defendant is not entitled to summary judgment based on the reasonable care element of Plaintiff's claim.

Defendant argues, lastly, that it is entitled to summary judgment because Plaintiff cannot show its actions caused her alleged injuries. In a CPLA claim, causation is tied to the defendant's

14

exercise of reasonable care, with the statute only providing recovery of damages "*caused* by the landowner's . . . *failure to exercise reasonable care*." Colo. Rev. Stat. § 13-21-115(3)(c)(I) (emphasis added). Because of the interrelation of these two elements, Defendant's causation argument suffers from the same problem as its reasonable care argument: Defendant is exclusively focused on the events directly after Plaintiff fainted at her table, rather than the circumstances surrounding Plaintiff's fall. Defendant attempts to saddle Plaintiff with fault, claiming that "[i]f anyone, Ms. Estrada was the but-for cause of her own claimed injuries and damages. Ms. Estrada declined medical attention, ambulance, or a rolling chair to assist her exit from the building. She voluntarily attempted to walk out of the store despite having already fainted at her table." Mot. 10 (citations omitted).

Again, while Defendant's assertions are certainly relevant to Plaintiff's mitigation of damages, Defendant's lack of an argument focusing on Plaintiff's alleged slip and fall on spilled liquid has not satisfied its burden of establishing its right to summary judgment as a matter of law. A reasonable jury could possibly side with Plaintiff on the disputed factual record before the Court. If there was spilled liquid on the floor at the time Plaintiff fell, given the presence of a restaurant employee within a few feet of the spot for a significant time period prior to Plaintiff's fall, a jury could determine Defendant failed to act reasonably to protect Plaintiff from that spill, and that failure caused her subsequent slip from which she was injured. The Court emphasizes it is not making a finding as to whether there was spilled liquid on the floor; only that the genuine factual dispute as to spilled liquid precludes the Court from finding that the facts so overwhelmingly and inarguably point in Defendant's favor that no reasonable jury could possibly side with the Plaintiff. Therefore, summary judgment for Defendant is not proper in this case.

## **CONCLUSION**

There is a genuine dispute of material fact in the record whether there was spilled liquid on the floor when Plaintiff fell. This dispute precludes the Court from granting summary judgment in Defendant's favor. The security video in this case does not blatantly contradict and utterly discredit Plaintiff's claims such that the Court could rely on it rather than viewing the facts and drawing reasonable inferences in the light most favorable to Plaintiff. Those facts do not so overwhelmingly and inarguably point in Defendant's favor that it could be said no reasonable jury could side with the Plaintiff; therefore, Defendant's Motion for Summary Judgment [filed October 24, 2019; ECF 32] is **denied**. The parties shall contact chambers by email on or before February 24, 2020 to discuss dates for a Trial Preparation Conference and Trial.

SO ORDERED.

Entered and dated at Denver, Colorado, this 21st day of February, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge